Anderson, J.,
delivered the opinion of the court.
The court is of opinion that the bonds executed by James Blackwell, deceased, in his lifetime, to his ward, James D. Blackwell, and which are the subject of this contention, were given for the balance due him by the said James Blackwell as his guardian; and that said bonds were given as an acknowledgment of the amount of his indebtedness to him and to get time for the pay *298 ment thereof; that the giving of said bonds and their acceptance by the ward did not merge the debt due to the ward by the obligor in his fiduciary character, and was not a discharge or extinguishment of the same until paid; and the bonds being executed for a pre-existing debt, due from the obligor as guardian, were not a novation of the debt, and did not change its fiduciary character. In Hamlin’s adm’r v. Atkinson, 6 Rand. 574, the question whether a bond taken by the ward for the amount appearing due from the guardian on settlement merged the original right of action, Judge Allen remarks in Yerby & wife v. Lynch & al., 3 Gratt. 439, “ was in effect decided by this court. It was there decided that such subsequent bond was no discharge of the official bond unless given and received in full satisfaction. A bond to perform that for which the party was before bound by another bond is no discharge of the latter.” And in the same case Judge Stanard concedes “the inefficiency of one security to merge another of equal or higher dignity.” And in the same case Judge Brooke said that the bond given by the guardian to the husband of his ward did not merge the official bond, is settled in the case of Hamlin’s adm’r v. Atkinson. “ In that case the bond of the guardian was given to his adult ward when she was sui juris and competent to contract for herself. Yet the court held that a bond for the same thing did not extinguish the official bond, and the ward might recover from the sureties in that bond what was due to her from the guardian, treating the bond given her as proof of what was due; and in this the whole court concurred.” In a note, it is said, Judge Green, in a manuscript opinion in Hamlin’s adm'r v. Atkinson, said: “ The bond given by the guardian to his ward for the amount due to her by settlement was not a discharge of the surety in his official bond. No bond can, in any case, be a bar or satisfaction of another by the same per *299 son.” By giving and receiving the bonds in this ease the debt did not lose its fiduciary character, it not appeariug that there was any agreement by the ward to it in full discharge and satisfaction of what was due to him from his guardian in his fiduciary character; of which it is necessary that the proof should be full and satisfactory. And the bond being for a debt which was fiduciary, it could not lose that character by lapse of time. It continues to be fiduciary until it is satisfied.
The court is further of opinion that the decree of January 11, 1869, is interlocutory and not final; which appears on its face and from subsequent decrees. It confirms the report of sales, except the sale to William H. Gaines, which it reserves for the subsequent action of the court. It confirms- the report of the master, John W. Pugh, which arranged the debts into three classes. First class, such as constituted a lien upon the lands; second class, fiduciary debts; and, third class, all other debts except voluntary obligations. And the bonds in question are placed in the third class; and the decree directs the money in hand to be distributed and paid according to said classification. The decree further directs James Keith, who is appointed a commissioner for the purpose, to collect the bonds of the purchasers returned with the report of sales, except the bonds of William II. Gaines, and when the whole of the purchase money due from any purchaser is collected, to make him a deed for the land purchased by him; but no direction or authority is given for the distribution or disbursement of said fund when collected; and said commissioner is directed to report his proceedings to the court; and it is further ordered that Commissioner Pugh do make report to the court of any further debts which it was suggested were still outstanding, and not reported, against the estate that may be proved before bim. So that there could not at that time have been a final disposition of *300 the whole fund which was subject to the control of the court, and the decree for disbursement was properly to so much of the money as was in hand.
In Harvey & wife v. Bronson, 1 Leigh, 108, cited in Ambrouse’s heirs v. Keller, 22 Gratt. 769, 774, Baldwin, J said: “ When the further action of'the court in the cause . is necessary to give complete^- the relief contemplated by the court, then the decree is to be regarded not as final, but interlocutory.” Further action of the court in this case was necessary to give complete relief, because the decree provided for only a partial distribution of the decedent’s estate, and directed enquiry as to outstanding and unreported debts. And pursuant to said decree the commissioner, on the 6th of March, 1869, reported additional debts to the amount of $7,394.75, which was confirmed by decree of April, 1869, and said commissioner was required to report to the next term of the court any other debts which had not been reported; and on the 16th of September, 1869, he reported other debts which had not theretofore been reported, to a considerable amount, and corrected his report of August 3, 1867, by allowing credits which he says had recently come to his knowledge, which should be allowed on several of the debts therein reported; which report, is confirmed by decree of 17th of September, 1869. And other collections having been made from the sales of lands by the commissioner of sales, .James Keith, on the 20th of September, 1870, it was decreed that a master do consolidate the several reports of Commissioner Pugh theretofore returned, and classify the creditors of James Blackwell, deceased, according to their priorities, and make distribution of $10,007.84, then in the hands of said Commissioner Keith, as reported by him, according to the rights of the parties entitled thereto, and to report the same to court. Pursuant to said decree, Master-Commissioner Shepperd, on the 1st of October, made a *301 report to the court, in which he arranged the debts into three classes—first, vendor’s lien; second, fiduciary; and, third, all other debts—and placed the debt due appellee, James J). Blackwell, in the third class. He also reported the amount which each creditor would be entitled to receive of the fund of $10,007.84, now in the hands of the commissioner, showing the amount which James D. Blackwell would be entitled to receive of that sum to be $518.82. The Hon. James Keith having been appointed the judge of said court, the disbursements were made in the execution of said decree of 20tli of September by R. Taylor Scott, as agent and attorney for the said James Keith, the bended commissioner, and as special commissioner. He reports a statement showing payment to each of the creditors of their proportion of said fund, except to James 1). Blackwell the pi-oportion due to him of $518.82, but that there is a balance in his hands of $544.73, cut of which it may be presumed it was intended he should be paid. Said special commissioner also reported that he had since said decree made further collections to the amount of $6,377.39, which sum had not been disposed of by any decree of the court. But of this sum he had disbursed $1,051.68, leaving a balance of $5,325.71; of which $4,005.18 were in his hands, the residue having been loaned to Samuel B. Chilton by authority of the court.
Prior to the making of this- report, to-wit: on the 9th of September, 1873, on motion, James D. Blackwell was admitted a party defendant to this suit, and by leave of the court filed his petition, alleging that his debt had been erroneously reported as not a fiduciary debt, and asking that the error might be corrected. And on the 20th of December following there was a decree rendered in which it was held that the said debt was a fiduciary debt, and recommitting the report of Commissioner Pugh of 3d of August, 1867, and all other reports of *302 debts thereafter made, with instructions to the master to ref°rm the same in accordance with the principles of decree. On the 22d of December the master filed his report, classing the said debt due James D. Blackwell as a fiduciary debt, and reporting that all the other debts of that class had been paid, and stating the amount of this debt, with interest; from which he says: “Deduct amount paid by Commissioner R. T. Scott, October, 1870, $518.82.” But when we turn to that report we do not find that said sum had been paid to James D. Blackwell, but we find that there was a balance of the fund in the hands of the commissioner sufficient to pay him said sum, after the payment to the other creditors their respective portions of said fund. Whether it had been then paid to the said James D. Blackwell or not, he had a decree for it, which decree it was not asked should be set aside. And it was not necessary to the attainment of what was due him that it should be set aside, because it appeared from the commissioner’s report that the fund then in hands, which was undisposed of and undistributed, was ample to satisfy what was due the said Blackwell without disturbing the distribution which had been made. But as he had a decree for the sum of $518.82 out of the sum which had been decreed to be distributed, and the commissioner had in his hands enough to satisfy it, it was not proper that it should be included in a decree for his debt, which was to be paid out. of the fund which had not been distributed.
From this recital of the proceedings of the court it is manifest that the appellee was not concluded by any proceedings theretofore had in the cause, even if he can be regarded as a party thereto, of his right to file a petition to have the master’s reports reformed so as to have Ms debt classed with the fiduciary debts, if it were a debt of that character, and that he was not debarred of that right by any acquiescence in what had been done, *303 or by delay in filing his petition. And we have seen that his‘debt was originally fiduciary in its character, and that it had not been novated or changed in its ciary character; and the rights of other creditors were not prejudiced by the delay in reforming and correcting the report of the master in this respect, inasmuch as they would have been no better off if his debt had been classed with the fiduciary debts from the beginning. '
The court is of opinion, therefore, that there is no error in the decree of the circuit court, and that the same be affirmed.
Decree aeeirmed.